**Renee PURTLE, Plaintiff–Appellee,**

v.

**ELDRIDGE AUTO SALES, INC., Defendant–Appellant.**

**No. 95–5631.**

United States Court of Appeals, Sixth Circuit.

Argued May 20, 1996.

Decided Aug. 1, 1996.

Marla K. Williams (argued), Rural Legal Services of Tennessee, Cookeville, TN, Craig P. Fickling, Jr. (briefed), Cookeville, TN, for Plaintiff-Appellee.

William A. Cameron (briefed), Cameron & Cameron, Cookeville, TN, Chantal M. Eldridge (argued and briefed), Cookeville, TN, for Defendant-Appellant.

Before: DAUGHTREY and MOORE, Circuit Judges; FORESTER, District Judge.*

FORESTER, District Judge.

The appellant, Eldridge Auto Sales, Inc. ("Eldridge"), appeals the final judgment of the United States District Court for the Middle District of Tennessee, Northeast Division,

* The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

entered against Eldridge for $1,000.00 in statutory damages and $5,444.05 in attorney's fees and costs pursuant to the Truth in Lending Act (the "TILA"), 15 U.S.C. § 1601, *et seq.* We affirm.

## I

The facts of this case are largely undisputed. On July 23, 1993, the appellee, Renee Purtle, purchased a 1986 Chevrolet Blazer from Eldridge. Because she did not have the funds to pay cash for the car, Purtle requested financing from Eldridge and filled out a credit application. On her credit application, Purtle allegedly made several material misrepresentations regarding her employment. Because of these alleged misrepresentations, Eldridge agreed to extend credit to Purtle to purchase the car.

Pursuant to the sale, the parties executed two documents: (1) a *Bill of Sale and Car Invoice,* and (2) a *Conditional Sales Contract.* These two documents constitute the entire agreement of the parties. Under the terms of both the Bill of Sale and the Conditional Sales Contract, Purtle was to make weekly payments of $60.00 to Eldridge until the balance of $6,890.60 was paid. Although Purtle made several installment payments to Eldridge, many were late and several tendered checks were worthless. After Purtle defaulted on her payments for several consecutive weeks, Eldridge repossessed the car.

On January 11, 1994, Eldridge filed a state civil warrant against Purtle to recover $823.00, the amount past due and owing on the Blazer. On July 22, 1994, Purtle filed a separate action in federal court against Eldridge, alleging various violations of the TILA. Purtle also removed Eldridge's state civil warrant to federal court based on pendent jurisdiction. Eldridge subsequently filed a motion to remand the state civil warrant to state court and a motion to dismiss the federal action. The district court granted Eldridge's motion to remand, but denied its motion to dismiss. Purtle then filed a motion for partial summary judgment on the issue of Eldridge's TILA liability. Five days prior to trial, Eldridge sought to assert a counter-claim against Purtle alleging fraud

and promissory fraud. The district court granted Purtle's motion for partial summary judgment, leaving damages as the only issue to be litigated at trial. In the same order, the district court denied Eldridge's motion for leave to file the counter-claim.

On February 6, 1995, a bench trial was held on the issue of the appropriate statutory damages and attorney's fees to be awarded under the TILA. After hearing proof and receiving affidavits from Purtle's attorneys, the district court entered final judgment on March 9, 1995, awarding Purtle $1,000.00 in statutory damages and $5,444.05 in attorney's fees and costs. Eldridge filed a timely notice of appeal.

## II

Eldridge submits the following issues for review:

(1) Whether Purtle is entitled to recover statutory damages under the TILA despite the fact that she fraudulently induced Eldridge to enter into the credit agreement upon which her damages are based and admits that she suffered no actual damages and fully understood all of her credit terms; and

(2) Whether Purtle's award of attorney's fees was excessive in light of her fraudulent inducement of the credit agreement, Eldridge's lack of culpability or bad faith, the Congressional purpose underlying the TILA, and Purtle's actual recovery.

This Court reviews the district court's award of statutory damages under the TILA under the *de novo* standard of review, *Holmes v. Donovan,* 984 F.2d 732, 735 (6th Cir.1993), and its award of attorney's fees and costs for an abuse of discretion, *Wrenn v. Gould,* 808 F.2d 493, 504 (6th Cir.1987).

## III

Enacted in 1968, the TILA imposes mandatory disclosure requirements on those who extend credit to consumers. 15 U.S.C. § 1601, *et seq.* The TILA was specifically designed to remedy problems that had developed from the rapidly expanding use of con-

sumer credit in the 1960s. The purpose of the TILA, as stated by Congress, is as follows:

It is the purpose of this title ... to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit....

15 U.S.C. § 1601(a). The Federal Reserve Board has been delegated the power to promulgate regulations to carry out the TILA's purpose. 15 U.S.C. § 1604. These regulations, among other things, mandate specific disclosures in credit transactions. *See* 12 C.F.R. § 226. In the event that a creditor fails to disclose any of the credit terms required under the TILA and its regulations, a consumer may bring a civil action against the creditor. 15 U.S.C. § 1640. If a violation is proven, the consumer may recover twice the amount of the finance charge (but not less than $100.00 nor more than $1,000.00). *Id.* at § 1640(a)(2)(A). The purpose of the statutory recovery is "to encourage lawsuits by individual consumers as a means of enforcing creditor compliance with the Act." *Watkins v. Simmons & Clark, Inc.,* 618 F.2d 398, 399 (6th Cir.1980). The TILA also permits recovery of reasonable attorney's fees and costs. 15 U.S.C. § 1640(a)(3). A plaintiff in a TILA case need not prove that he or she suffered actual monetary damages in order to recover the statutory damages and attorney's fees. *Watkins,* 618 F.2d at 399. Nor is it necessary to show that the consumer was actually misled or deceived by an ambiguous credit term in order to prevail. *Smith v. Chapman,* 614 F.2d 968, 971 (5th Cir. 1980); *Millhollin v. Ford Motor Credit Co.,* 531 F.Supp. 379, 386 (D.C.Or.1981).·

## IV

The issue of the appropriate statutory penalty, reasonable attorney's fees, and costs to be awarded Purtle came before the district court on February 6, 1995. After hearing testimony and reviewing the relevant documents, the district court determined that Eldridge violated the TILA in several ways. First, Eldridge failed to disclose the finance charge and the annual percentage rate, in violation of 12 C.F.R. § 226.18(d) and (e). Second, Eldridge used the term "total credits" as opposed to "amount financed," in violation of 12 C.F.R. § 226.18(b). Finally, Eldridge violated 12 C.F.R. § 226.18(j) by failing to disclose the total sales price. Although Purtle admittedly suffered no actual damages as a result of Eldridge's incomplete disclosures, the district court entered judgment against Eldridge in the amount of $1,000.00 pursuant to § 1640(a)(2)(A)(i).

The district court then turned to the issue of attorney's fees and reviewed Purtle's petition for attorney's fees, the accompanying time logs of her attorneys, and Eldridge's specific objections thereto. Noting that this is a straightforward TILA case, the district court determined that it did not require the expertise of more than one lawyer. Thus, to the extent that the fees of Purtle's two attorneys were duplicative, the district court awarded one fee. The district court also declined to award attorney's fees for the time Purtle's attorneys spent conferring with each other. However, the district court did award Purtle $5,242.50 in attorney's fees and $201.55 in costs.

## V

On appeal, Eldridge essentially sets forth two arguments. First, Eldridge argues that Purtle is not entitled to recover statutory damages because she fraudulently induced Eldridge to enter into the credit agreement, she suffered no actual damages, and she understood all of her credit terms. Second, Eldridge argues that if statutory damages are appropriate, the district court's award of attorney's fees was excessive because it failed to consider the parties' relative culpability, TILA's congressional purpose, and Purtle's actual recovery. Each argument will be addressed separately below.

## A. THE DISTRICT COURT'S AWARD OF STATUTORY DAMAGES

 Eldridge does not challenge the district court's application of the TILA to the credit disclosures made to Purtle or its determination that Eldridge failed to make certain disclosures mandated by the TILA. Rather, Eldridge argues that Purtle's alleged

misrepresentations in her credit application are a defense to its technical violations of the TILA. This circuit has not yet addressed the issue of whether fraudulent inducement of a credit agreement is a defense to TILA liability.

According to Eldridge, the TILA disclosure requirements only apply to credit transactions which create a contractual relationship between a consumer and a creditor. *See, e.g.,* 15 U.S.C. § 1631(a); 12 C.F.R. §§ 226.2(a)(13) and 226.17(c)(1); *Wachtel v. West,* 476 F.2d 1062 (6th Cir.), *cert. denied* 414 U.S. 874, 94 S.Ct. 161, 38 L.Ed.2d 114 (1973). Although the TILA's disclosure requirements do not arise until a contractual relationship exists between the parties, the TILA does not define when such contractual relationship arises. Rather, the TILA relies on state law to define the same. *See* 12 C.F.R. § 226.2(b)(3). Under Tennessee law, the fraudulent inducement of a contract invalidates the contract because there is no meeting of the minds and illusory consideration. *Seaton v. Lawson Chevrolet–Mazda, Inc.,* 821 S.W.2d 137 (Tenn.1991); *Dozier v. Hawthorne Development Co.,* 37 Tenn.App. 279, 262 S.W.2d 705 (1953). As a result, Eldridge argues that Purtle's TILA claim must fail because there was no "obligation" requiring disclosure under 15 U.S.C. § 1631(a) ("a creditor or lessor shall disclose to the person who is *obligated* . . .") (emphasis added). *See Streit v. Fireside Chrysler–Plymouth, Inc.,* 697 F.2d 193 (7th Cir.1983).

Eldridge also points out that neither the TILA's express language nor its congressional purpose indicate that a state law defense to the validity or enforcement of a contract would not be a defense to its disclosure requirements. Moreover, Eldridge points out that the TILA is a remedial statute which serves two purposes: (1) to permit an individual consumer to recover for her injuries; and (2) to deter socially undesirable lending practices. *See* 15 U.S.C. § 1601(a); *Murphy v. Household Finance Corp.,* 560 F.2d 206 (6th Cir.1977). Eldridge contends that the congressional purpose would not be served by awarding Purtle any statutory damages because she admittedly suffered no damages, was never misled or confused by the credit

agreement, and understood all of her credit terms. *See Streit,* 697 F.2d at 197. Furthermore, Eldridge contends that as a matter of public policy fraudulent conduct should not be condoned or encouraged nor should it serve as the basis for recovering damages. *See id.*; *Rowland v. Carriers Ins. Co.,* 738 S.W.2d 183 (Tenn.1987); *Anderson v. Chattanooga General Services Co.,* 631 S.W.2d 380 (Tenn.1981); *Foster v. ESIS, Inc.,* 563 S.W.2d 180 (Tenn.1978). Therefore, Eldridge argues that Purtle is not entitled to recover statutory damages.

On the other hand, Purtle argues that her alleged misrepresentations of her financial condition are no defense to Eldridge's violation of the TILA. The Fifth Circuit Court of Appeals has held that once a court finds a violation of the TILA, no matter how technical, the court has no discretion as to the imposition of civil liability. *Grant v. Imperial Motors,* 539 F.2d 506 (5th Cir.1976). This Court agrees with the reasoning of the Fifth Circuit Court of Appeals in *Grant.* According to that Court, "once the court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability." *Id.* at 510. *See also Williams v. Public Finance Corporation,* 598 F.2d 349 (5th Cir.1979). In reaching this conclusion, the Court relied on the civil liability section of the TILA, which provides:

> Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part of part D of this subchapter with respect to any person is liable to such person in an amount equal to the sum of
>
> (1) any actual damage sustained by such person as a result of the failure;
>
> (2)(A) in the case of an individual action twice the amount of any finance charge in connection with the transaction, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000;
>
> \* \* \* \* \* \*
>
> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1640(a). The Eighth Circuit Court of Appeals has followed the same rule. *Dryden v. Lou Budke's Arrow Finance Company*, 630 F.2d 641, 646 (8th Cir.1980) ("the ultimate nonenforceability of a credit agreement under state law should not be a defense to an action under the TILA for failure to disclose the information required by the act"). Based on the unambiguous statutory language, it is clear that unless one of the defenses provided in the TILA is applicable to this transaction, the district court appropriately awarded Purtle the statutory penalty set out above.

## B. THE DISTRICT COURT'S AWARD OF ATTORNEY'S FEES

■ Section 1640(a)(3) of the TILA provides that a successful plaintiff is entitled to "reasonable attorney fees, as determined by the Court." 15 U.S.C. § 1640(a)(3). Eldridge argues that the district court abused its discretion in awarding attorney's fees to Purtle. Although the district court appropriately considered the simplicity of the case, the number of attorneys necessary, the reasonable hourly rate, and the time and labor expended, Eldridge argues that the attorney's fee award was excessive because certain other factors were not considered. Specifically, Eldridge argues that the district court failed to consider the results obtained and the undesirability of the case, the alleged violations of the TILA and the congressional purpose underlying the TILA, Eldridge's lack of culpability or bad faith, and the amount of the statutory award.

First, Eldridge contends that the undisputed facts demonstrate that Purtle fraudulently induced Eldridge to enter into a credit agreement upon which her statutory damages were based. Eldridge argues that Purtle's fraudulent inducement of the credit agreement demonstrates the undesirability of the case because her recovery, if any, encourages the perpetration of fraud and permits a culpable party to benefit from her own fraudulent conduct. Second, Eldridge argues that because Purtle suffered no actual damages and fully understood her credit terms, the district court should have considered the congressional purpose underlying the TILA as a factor in determining its award of attorney's

fees. Eldridge points out that the congressionally stated purpose of the TILA is to assure the meaningful disclosure of credit terms and to ensure fully informed consumers. Eldridge argues that Purtle should not be awarded attorney's fees because there is no nexus between the alleged violations of the TILA and its purpose. *See Dzadovsky v. Lyons Ford Sales, Inc.*, 452 F.Supp. 606 (W.D.Pa.1978), *aff'd*, 593 F.2d 538 (3rd Cir. 1979). Third, Eldridge argues that the district court should have considered Eldridge's lack of culpability or bad faith as a factor in determining the award of attorney's fees. Although Eldridge agrees that lack of culpability is not an appropriate factor when determining a statutory award, Eldridge contends that it was an abuse of discretion not to consider it in awarding attorney's fees. *See Thrift Funds of Baton Rouge Inc. v. Jones*, 274 So.2d 150 (La.), *cert. denied*, 414 U.S. 820, 94 S.Ct. 115, 38 L.Ed.2d 53 (1973). Finally, Eldridge argues that the equities of this case weigh strongly in its favor and thus the district court should not have awarded Purtle attorney's fees so greatly in excess of her recovery. Purtle, on the other hand, argues that the district court did not abuse its discretion in awarding her attorney's fees.

■ Because of the mandatory nature of the award of attorney's fees under the TILA and because the district court held that Eldridge violated this act, the district court appropriately considered the issue of attorney's fees. The attorney's fees are not limited by the amount of Purtle's recovery. *See In re Pine*, 705 F.2d 936, 938 (7th Cir.1983); *McGowan v. King, Inc.*, 661 F.2d 48 (5th Cir.1981). There is no requirement that Purtle suffer actual damages to recover under the TILA. *Dzadovsky* 593 F.2d at 539. The district court made a complete review of the attorney's fees documentation, considered all the relevant factors, and subtracted those portions of the fee which were unnecessary. Therefore, the district court did not abuse its discretion in awarding Purtle attorney's fees.

## C. ATTORNEY'S FEES FOR THIS APPEAL

In the event that this court upholds the district court's ruling, Purtle argues that she

is entitled to reasonable attorney's fees for this appeal. Eldridge failed to address this issue in its briefs.

 Generally, the TILA allows a plaintiff prevailing on a TILA claim on appeal to be compensated for appellate work. 15 U.S.C. § 1640(a)(3); *de Jesus v. Banco Popular de Puerto Rico,* 918 F.2d 232, 235–36 (1st Cir.1990); *Dias v. Bank of Hawaii,* 732 F.2d 1401, 1403 (9th Cir.1984); *Thomas v. Myers–Dickson Furniture Co.,* 479 F.2d 740, 748 (5th Cir.1973). We will determine the appropriate fee award after receiving the relevant documentation from Purtle.

## VI

For the foregoing reasons, we **AFFIRM.**