[657 NYS2d 840]

Matthew Orlosky et al., Appellants, v Empire Security Systems, Inc., Defendant, and Associates Financial Services Company, Inc., Respondent.

Third Department, May 22, 1997

402

APPEARANCES OF COUNSEL

*Maider & Smith*, Gloversville (*Robert L. Maider* of counsel), for appellants.

*David L. Ganje*, Albany, for respondent.

## OPINION OF THE COURT

CARDONA, P. J.

In August 1994 defendant Empire Security Systems, Inc. offered to sell plaintiffs a security system for their home. According to plaintiffs, they were told by Empire's salesperson that the total cost would be $4,744, with no payment for 90 days. Plaintiffs signed an "Agreement for Sale and Installation of Residential Alarm System" with Empire. Plaintiffs claim they were never shown an installment payment contract nor a fair credit disclosure notice. Prior to the August 1994 transaction, defendant Associates Financial Services Company, Inc. had entered into a contract whereby it agreed to purchase the payment obligations of some of Empire's customers. In furtherance of this, Associates supplied Empire with its own retail installment contract (hereinafter RIC) forms, loan applications and fair notice form.

There is no dispute that, at some point after plaintiffs signed the sales agreement with Empire, an employee of Empire, without the knowledge of either plaintiffs or Associates, forged plaintiffs' signatures on both the RIC and the fair notice forms provided to Empire by Associates. Empire then assigned the loan to Associates in return for immediate payment. Shortly after installation of the security system, plaintiffs not only became dissatisfied with the product, but also began immediately to receive monthly bills from Associates, an entity they did not know; plaintiffs did not pay the bills and hired an attorney. After the forgery was discovered, Empire agreed to remove the system and repay Associates the amount it received on the assignment of the loan.

Plaintiffs filed this action against both Empire and Associates claiming fraud, violations of the Federal Truth-in-Lending

Act (15 USC § 1601 *et seq.* [hereinafter TILA]), the parallel provisions of TILA under New York's Retail Installment Sales Act (Personal Property Law art 10 [hereinafter RISA]) and General Business Law § 349. Plaintiffs later received permission to amend their complaint to delete allegations that Associates had committed fraud or violated the General Business Law. Subsequently, Associates was granted summary judgment dismissing the complaint against it and plaintiffs now appeal.

Plaintiffs' principal contention on appeal is that Supreme Court erred in dismissing the claims alleging that Associates violated the disclosure obligations contained in TILA and RISA.[1] We disagree. Significantly, a valid contract is a prerequisite to invocation of TILA protections (*see, Fairley v Turan-Foley Imports*, 65 F3d 475, 480; *Jensen v Ray Kim Ford*, 920 F2d 3, 4). RISA is similar to TILA in that it presupposes the existence of a valid agreement between the parties (*see,* Personal Property Law § 401 *et seq.*). Nevertheless, "[a]lthough the TILA's disclosure requirements do not arise until a contractual relationship exists between the parties, the TILA does not define when such contractual relationship arises. Rather, the TILA relies on state law to define the same" (*Purtle v Eldridge Auto Sales*, 91 F3d 797, 801 [citation omitted]; *see, Fairley v Turan-Foley Imports, supra,* at 480; *see also,* 15 USC § 1631 [a]; 12 CFR 226.2 [a] [13]; [b] [3]).

Here, the only "contract" ostensibly between plaintiffs and Associates was the forged RIC. Under State law and general contract law, a forged signature renders a contract void *ab initio*[2] (*see, Ticor Tit. Guar. Co. v E.F.D. Capital Group*, 210 AD2d 841, *lv denied* 85 NY2d 809; 10 Williston, Contracts § 1139, at 393; § 1139A, at 398 [3d ed 1967]; *see also,* UCC 3-401). Because there can be no meeting of the minds of the parties when a forgery has been perpetrated, no contract existed in the case at hand (*see, Ticor Tit. Guar. Co. v E.F.D. Capital Group, supra; see also, Moore & Moore Real Estate v Aloi*, 234 AD2d 685, 685) and the forged RIC could not form

---

1. The third cause of action in the complaint accuses Associates of improper debt collection practices under TILA justifying damages pursuant to 15 USC § 1692k. Since plaintiffs fail to challenge the dismissal of this claim in their brief, we deem the issue abandoned (*see, Gibeault v Home Ins. Co.*, 221 AD2d 826, 827, n 2).

2. In the instant case, plaintiffs made no payments to Associates or took any other action which could support an argument that they ratified the forged agreement or created a contract by conduct (*cf., Fairley v Turan-Foley Imports*, 65 F3d 475, *supra*).

the basis for TILA protection (*see, Jensen v Ray Kim Ford, supra,* at 4),[3] nor trigger the civil penalties of RISA.

We are unpersuaded by plaintiffs' alternative contention that, assuming the forged RIC could not meet the prerequisites of a valid contract, then the sales agreement they signed with Empire could do so. Significantly, Associates was not a party to Empire's sales contract with plaintiffs and was not mentioned anywhere in it. Although it has been held that a valid sales contract is sufficient to base a TILA action against *the original seller* (here Empire) (*see, Purtle v Eldridge Auto Sales,* 91 F3d 797, *supra; Fairley v Turan-Foley Imports,* 65 F3d 475, *supra*), we cannot adopt the view that such a sales contract, without more, could be utilized to sustain a TILA action or RISA claim against an assignee of a *separate* RIC contract. Here, there is no dispute that only the forged RIC was assigned to Associates, not the sales agreement. Thus, any disclosure violations in Empire's sales agreement form could not be attributed to Associates and Supreme Court properly granted summary judgment to Associates.

The remaining arguments advanced by plaintiffs have been examined and found to be unpersuasive.

WHITE, PETERS, SPAIN and CARPINELLO, JJ., concur.

Ordered that the order and judgment are affirmed, with costs.

---

3. We further note that, contrary to plaintiffs' argument, under the facts presented Associates does not qualify as a "creditor" under TILA (*see,* 12 CFR 226.2 [a] [17]; *see also,* 12 CFR 226.2, Official Staff Interpretation [12 NYCRR part 226, Supp I] ¶ 2 [a] [17] [i] [2], at 298). Instead, Associates was clearly an assignee and assuming, arguendo, the RIC was a valid contract, Associates could only be liable under TILA "if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement" (15 USC § 1641 [a]). Notably, plaintiffs here do not, aside from the forgeries, allege any facial violations nor any illegalities in the credit terms or disclosures of the RIC itself.